Harrington Christopher YOUNG,
Appellant,

v.

The STATE of Texas, Appellee.

No. 01–09–00790–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 1, 2012.

Discretionary Review Refused
May 16, 2012.

Sharon E. Slopis, Houston, TX, for Appellant.

Jessica Akins, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

Appellant Harrington Christopher Young pleaded guilty, without an agreed recommendation as to punishment, to aggravated sexual assault of a child under the age of 14, a first-degree felony. Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (a)(2)(B), (e) (West Supp. 2011). The trial court sentenced him to imprisonment for 15 years. Young appeals from the judgment on two grounds: (1) ineffective assistance of counsel, and (2) cruel and unusual punishment. We affirm the judgment of the trial court.

## Background

At the time of Young's guilty plea, there was no agreed recommendation as to his sentence. The trial court ordered the preparation of a presentence investigation (PSI) report before making a finding of guilt.

Some statements in the PSI report appear to be inconsistent. For example, the report states that Young previously was arrested by Baytown police for a separate incident of aggravated sexual assault of a child. But the report states that Young had no prior arrests. In addition, the PSI report categorized the Baytown incident as part of Young's adult criminal record, but Young was 16 years old at that time. The report also states that Young had no prior juvenile criminal record. Finally, although Young was 17 years old at the time of the underlying offense, the PSI report repeatedly recites Young's age as 18, which was his age at the time the report was prepared.

The trial court sentenced Young to imprisonment for 15 years. There is no reporter's record for any proceeding in the trial court, including the sentencing hearing.

In briefing to this court, Young's initial court-appointed appellate counsel stated her professional opinion that there were no arguable grounds for reversal and that therefore any appeal would be wholly frivolous. Young, however, listed three specific grounds in his pro se notice of appeal, which his appellate counsel did not completely address. This court reviewed the entire record, including Young's pro se notice of appeal, and based upon the brief filed by counsel a supplemental record containing the PSI report was ordered to determine whether arguable grounds for appeal existed. *See Anders v. California,*

386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967); *Bledsoe v. State,* 178 S.W.3d 824, 826–27 (Tex.Crim.App.2005). Based upon that review, this court concluded that there was at least one arguable ground for appeal: that Young's trial counsel may have been ineffective for not objecting to the PSI report based on the inconsistent indications about his age at the times of the Baytown incident and the underlying offense. *See Young v. State,* No. 01–09–00790–CR, at 5 (Tex.App.-Houston [1st Dist.] June 29, 2011, order). This court remanded the case to the trial court to allow Young's appellate counsel to withdraw and to appoint new counsel to represent Young on appeal. *See id.* We now address the arguments made by Young's new counsel on appeal.

## Analysis

Young raises two issues. First, Young argues that he received ineffective assistance of counsel at the PSI hearing because his trial attorney (1) failed to file a motion requesting deferred adjudication, when the record otherwise reflects his eligibility, (2) failed to object to or move to correct the PSI report based on the inconsistencies regarding the Baytown incident and the implication that Young was 18 at the time of the underlying offense, and (3) failed to request a court reporter to preserve the record for appeal. Second, Young argues that his 15–year sentence constitutes cruel and unusual punishment under the Eighth Amendment, considering his contention that he was eligible for deferred adjudication. The State argues that Young has not met his burden to establish ineffective assistance of counsel and that the record does not show that he preserved his cruel-and-unusual-punishment objection to the sentence.

## I. Ineffective assistance

■ The standard of review for ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984), and *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). To prevail, Young must first show that his counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Bone,* 77 S.W.3d at 833. "Specifically, appellant must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms." *Bone,* 77 S.W.3d at 833. "Second, appellant must show that this deficient performance prejudiced his defense," meaning that Young "must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App. 2002)). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

### A. Failure to request deferred adjudication

Young argues that he was deprived of a fair sentencing hearing because his counsel did not file a motion requesting deferred adjudication, and that his sentence might have been different if such a motion had been filed. In support of this argument, Young relies on *May v. State,* 722 S.W.2d

699 (Tex.Crim.App.1984). In *May,* the trial court refused to submit a jury charge on probation because the defendant's trial counsel had submitted an unsworn motion requesting probation, rather than a sworn motion as required by the Code of Criminal Procedure. *May v. State,* 660 S.W.2d 888, 889 (Tex.App.-Austin 1983), *aff'd,* 722 S.W.2d 699 (Tex.Crim.App.1984); *see* Tex. Code Crim. Proc. Ann. art. 42.12, § 4(d)(3), (e) (West Supp. 2011) (prohibiting jury-sentenced community supervision if defendant fails to file sworn motion). Reversing the conviction, the court of appeals found that the defendant's trial counsel's failure to verify the motion "can in no way be considered trial strategy" because it "totally precluded the jury from considering probation." *May,* 660 S.W.2d at 890. The Court of Criminal Appeals affirmed. *May,* 722 S.W.2d at 700.

■ *May* is distinguishable from this case. A sworn motion is required for a jury's sentence of community supervision. *See State v. Posey,* 330 S.W.3d 311, 316 (Tex.Crim.App.2011); Tex.Code Crim. Proc. Ann. art. 42.12, § 4(d)(3), (e). However, the Code of Criminal Procedure does not require such a motion, whether sworn or unsworn, in order for the judge to assess deferred adjudication after receiving a guilty plea. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 5(a). Because the defendant's motion is unnecessary to permit the trial judge to assess deferred adjudication, Young cannot show that the alleged failure to file the motion infringed an objective standard of professional norms. *See Bone,* 77 S.W.3d at 833.

Moreover, the trial court is prohibited from assessing deferred adjudication for a defendant who has pleaded guilty to aggravated sexual assault unless "the judge makes a finding in open court that placing the defendant on community supervision is in the best interest of the victim." Tex.

Code Crim. Proc. Ann. art. 42.12, § 5(a). Because the record does not show that the trial court made this finding, or that the trial court would have made such a finding if requested, any request for deferred adjudication would have been futile. Young therefore cannot show that his counsel's performance was deficient. *See Mooney v. State,* 817 S.W.2d 693, 698 (Tex.Crim.App. 1991) ("Counsel is not required to engage in the filing of futile motions.").

### B. Failure to object to PSI

■ Young next argues that he received ineffective assistance because his trial counsel failed to object to or correct inconsistent information in the PSI report, specifically, (1) the Baytown incident being listed under adult criminal history when Young was, in fact, 16 on the indicated date, and (2) the implication that Young was 18 at the time of the offense, when he was, in fact, 17 at the time. Young does not rely on any authorities to support this ground, except for this court's previous order identifying this as an arguable issue.

Even assuming that the trial court was under a misimpression regarding Young's age at the time of the offense and the Baytown incident, Young has not established that there is a reasonable probability that he would have received a lesser sentence if his trial counsel had objected to or corrected the PSI. *See Bone,* 77 S.W.3d at 833. As previously mentioned, the trial court could not order deferred adjudication absent a finding that deferred adjudication is in the best interest of the victim. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 5(a). Since Young was convicted of a first-degree felony, the trial court was bound to enter a sentence of imprisonment for life or for a term between 5 and 99 years. *See Klock v. State,* 177 S.W.3d 53, 66 (Tex.App.-Houston [1st Dist.] 2005, pet. ref d); Tex. Penal Code Ann. § 12.32(a) (West 2011). But within that range, the

trial court assesses punishment according to a normative, not intrinsically factbound process, and it enjoys essentially unfettered discretion. *Ex parte Chavez,* 213 S.W.3d 320, 323 (Tex.Crim.App.2006). Even assuming that the trial court was under a misimpression about Young's history, nothing firmly founded in the record establishes a reasonable probability that the trial court would have entered a different sentence if it understood that Young was 16 at the time of the Baytown incident and 17 at the time of the offense. *See Thompson,* 9 S.W.3d at 813; *Bone,* 77 S.W.3d at 833. Therefore, Young cannot establish ineffective assistance of counsel on this basis.

### C. Failure to request court reporter

Young's final argument regarding ineffective assistance is premised on his trial counsel's failure to request a court reporter. Young argues that if the court reporter had been requested, the record would have revealed whether his counsel made objections to the PSI report and sentence on the grounds previously discussed in this opinion. According to Young, such a record either would establish his counsel's ineffective assistance for failing to make the objections, or the record would have reflected the objections and thereby preserved the matters for appellate review. Young also contends, without explanation, that his sentence might have been different if the court reporter were present.

Young's only authority for this argument is *Montez v. State,* 824 S.W.2d 308 (Tex. App.-San Antonio 1992, no pet.). In *Montez,* the court of appeals observed that a criminal defendant's trial counsel had failed to follow the proper procedure for preserving error during jury selection. *Id.* at 310 (citing *Jacobs v. State,* 787 S.W.2d 397, 405 (Tex.Crim.App.1990)). However, contrary to Young's interpretation, the court of appeals in *Montez* did not

reverse the conviction because of the failure to preserve error, but rather it reversed because of the overall lack of "fundamental fairness" stemming from other faults committed during jury selection, along with "numerous other severe deficiencies" in defense counsel's performance demonstrated on appeal. *Id.* at 310–11. Thus, *Montez* does not provide support for Young's proposition that a failure to request a court reporter during a sentencing hearing constitutes reversible error.

██ A failure to request that a court reporter record trial court proceedings is not per se ineffective assistance of counsel. *See Gonzales v. State,* 732 S.W.2d 67, 68 (Tex.App.-Houston [1st Dist.] 1987, no pet.). When counsel fails to request a court reporter, this court will not speculate as to what actually transpired. *See McQueen v. State,* 702 S.W.2d 302, 304 (Tex. App.-Houston [1st Dist.] 1985, no pet.); *Booher v. State,* 668 S.W.2d 882, 885 (Tex.App.-Houston [1st Dist.] 1984, pet. ref d). Young effectively asks this court to speculate about what objections his trial counsel did or did not make and what prejudice could have resulted. Because such speculation would not be firmly founded in the record, Young cannot establish his trial counsel's deficient performance or any prejudice therefrom. *See Thompson,* 9 S.W.3d at 813; *McQueen,* 702 S.W.2d at 304.

We overrule Young's first issue.

### II. Cruel and unusual punishment

In his second issue, Young argues that his 15–year sentence for the first-degree felony offense of aggravated sexual assault of a child under the age of 14 is cruel and unusual, in violation of the Eighth Amendment. *See* U.S. Const. amend. VIII. Young contends that he meets the criteria for deferred adjudication and that the sentence is grossly disproportionate consider-

ing the nature of the offense and his age at the time. Young impliedly concedes that this argument was not preserved for appellate review at the trial level, either because the objection was not made or because of the lack of a court reporter's record. Nevertheless, he asserts that the error is fundamental and therefore it need not have been brought to the trial court's attention. The State argues that there is no indication in the available record that Young objected to his punishment at the time he was sentenced, and therefore Young has not preserved the issue for appellate review. Alternatively, addressing the merits of Young's argument, the State argues that a sentence assessed within the statutory range is generally not cruel and unusual punishment and that Young's sentence, which was assessed at the lower end of the statutory range, was not disproportionate given the offense he committed.

Generally, to preserve error for appellate review, the record must show that an objection was made to the trial court, the grounds for relief were made with sufficient specificity, and the trial court ruled upon the objection. *Clarke v. State*, 270 S.W.3d 573, 579 (Tex.Crim.App. 2008); Tex.R.App. P. 33.1 "The burden is on appellant to see that a sufficient record is presented on appeal to show error." *Montoya v. State*, 872 S.W.2d 24, 25 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). Even most constitutional errors are waived if not properly preserved. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995).

Young contends that his sentence resulted from a constitutional violation of the variety so "fundamental" that he was not required to object to preserve error. The only authority Young provides for this argument is a citation to Rule 103(d) of the Rules of Evidence, which provides that notice may be taken of "fundamental errors affecting substantial rights although they were not brought to the attention of the court." TEX.R. EVID. 103(d). The suggestion of fundamental error is inadequately briefed, *see* TEX.R.APP. P. 38.1(i), but without addressing whether and under what circumstances a violation of the Eighth Amendment could constitute fundamental error that requires no trial objection to be preserved for appeal, we conclude that no such error occurred in this case. Young was convicted of a first-degree felony and sentenced on the lower end of the statutory range of punishments authorized by the Legislature for such offenses. *See* TEX. PENAL CODE ANN. § 12.32(a) (first degree punishment shall be imprisonment "for life or for any term not more than 99 years or less than 5 years"). Punishment assessed within the statutory limits is generally not cruel and unusual punishment. *Samuel v. State*, 477 S.W.2d 611, 614 (Tex.Crim.App.1972); *Gavin v. State*, 404 S.W.3d 597, 606 (Tex. App.-Houston [1st Dist.] 2010, no pet.). Accordingly, we overrule Young's second issue.

### Conclusion

We affirm the judgment of the trial court.

Justice KEYES, concurring.

EVELYN V. KEYES, concurring opinion, Justice.

I respectfully concur. Appellant, Harrington Christopher Young, pleaded guilty to the first degree felony offense of aggravated sexual assault of a child under the age of fourteen.[1] Pursuant to a plea bar-

---

1. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (Vernon Supp. 2011).

gain without an agreed recommendation as to punishment, the trial court sentenced Young to fifteen years' confinement. In two issues, Young contends that (1) his trial counsel rendered ineffective assistance and (2) his sentence constitutes cruel and unusual punishment. I agree with the majority that Young has not established ineffective assistance of counsel, but I would decide the issue on the basis that Young cannot demonstrate that a reasonable probability exists that had his trial counsel taken the actions that Young contends he should have taken, the result of the proceeding would have been different and Young would have received deferred adjudication community supervision. Regarding Young's second issue, I would hold that he cannot establish that his sentence, which falls within the permissible statutory range, constitutes cruel and unusual punishment.

## Background

I adopt the majority's description of the background facts, but respectfully add the following facts relevant to this opinion.

Young argues that his trial counsel told him that he was seeking deferred adjudication community supervision. The clerk's record contains Young's pro se notice of appeal, in which he states, "Defendant was [misled] by attorney into signing for a (PSI) presentencing investigation, being lead to believe he was signing a plan for 8 years (PSI) probation sentencing investigation." The record also includes a handwritten letter from Young to the trial court, in which he apologized for an outburst in court, presumably at his sentencing hearing, and explained that his trial counsel had informed him that he would be receiving probation.

The presentence investigation report ("PSI") included a copy of a printout from the Justice Information Management System ("JIMS"). The JIMS printout included a "summary of facts" concerning the initial complaint against Young. This summary reflected that Young forcibly assaulted the complainant, who "kick[ed] and hit[ ] him" in an effort to make him stop.[2] In an interview with the PSI investigator, Young denied that the complainant kicked and screamed, but he acknowledged that she twice told him to stop and that she pushed him away.

The PSI included reports of interviews with Young's family members, including the niece he admitted assaulting, who expressed forgiveness of Young, requested counseling and community supervision, and asked that he be sent home. The PSI also included statements by Young in which he expressed remorse, stated that he knew what he did was wrong and that he was "very ashamed" and "very sorry," and asked for probation. The PSI also listed "supervision plan/sentencing options" available for Young and included a number of character-reference letters from family members vouching for Young's character and requesting community supervision. Instead of placing Young on deferred adjudication community supervision, the trial court ultimately sentenced him to fifteen years' confinement.

## Ineffective Assistance of Counsel

On appeal, Young contends that his trial counsel was constitutionally ineffective because (1) he failed to file a motion for deferred adjudication, for which the record

2. The facts in this summary are substantively identical to the facts contained in the probable cause affidavit included in the information initially charging Young with aggravated sexual assault in this case.

reflected Young was eligible; (2) he failed to object to or move to correct the PSI based on the apparent errors regarding a pending aggravated sexual assault of a child case allegedly occurring in Baytown ("the Baytown incident") and the implication that Young was eighteen at the time of the charged offense; and (3) he failed to request a court reporter to preserve the record for appeal at the sentencing hearing.

To prevail on an ineffective assistance of counsel claim, Young must demonstrate two things by a preponderance of the evidence: (1) his trial counsel's performance was deficient; and (2) a reasonable probability exists that, but for the deficiency, the result of the proceeding would have been different. *Strickland v.* Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. at 2068. An appellant seeking to establish ineffective assistance must meet *both* prongs of *Strickland;* thus, an appellate court reviewing an ineffective assistance of counsel claim is not required to address both "components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. at 2069 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). The majority concludes that Young has not demonstrated that his trial counsel's performance was deficient; I would conclude that Young has not demonstrated that, but for his trial counsel's alleged errors, a reasonable probability exists that the result of the proceeding would have been

different and he would have received deferred adjudication community supervision instead of a fifteen-year sentence.

### A. Failure to File Motion Requesting Deferred Adjudication

Young contends that his trial counsel was constitutionally ineffective because he failed to file a motion for probation when the record reflected that Young was eligible for deferred adjudication community supervision.

As the majority notes, unlike jury-recommended community supervision, which requires the defendant to file a pre-trial sworn motion averring that he has not been previously convicted of a felony, no such motion is required for the trial court to consider and impose deferred adjudication community supervision. *Compare* TEX.CODE CRIM. PROC. ANN. art. 42.12, §§ 4(d)(3), (e) (Vernon Supp. 2011) (providing that defendant is not eligible for jury-recommended community supervision unless he files with trial court, before trial, sworn motion stating that he has not been convicted of felony in Texas or in any other state), *with id.* § 5 (providing that trial court may impose deferred adjudication community supervision when, in court's discretion, "the best interest of society and the defendant will be served," and containing no motion requirement). Instead, the decision to impose deferred adjudication community supervision lies entirely within the trial court's discretion; although a defendant may be eligible for deferred adjudication community supervision, he is not entitled to it. *See id.* § 5(a) ("[W]hen *in the judge's opinion* the best interests of society and the defendant will be served, the judge *may,* after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an

adjudication of guilt, and place the defendant on community supervision.") (emphasis added); *Hurley v. State*, 130 S.W.3d 501, 506 (Tex.App.-Dallas 2004, no pet.) ("The trial court has broad discretion to fashion appropriate [sentencing] plans using the full range of punishment, community supervision, and deferred adjudication community supervision.").

Here, the record reflects that, although Young's trial counsel did not file a specific motion seeking deferred adjudication community supervision, the trial court was aware that Young desired deferred adjudication. The PSI reflects, in two places, that Young was "hoping for" and "asking for" probation. The PSI also included statements from Young's family members, including numerous character-reference letters, stating their desire that the trial court place Young on probation, require him to attend counseling, and allow him to return home. Thus, even though Young's trial counsel did not file a specific motion seeking deferred adjudication, the trial court, by reading the PSI and the attached reference letters, was aware that Young desired probation.

To establish prejudice, Young must demonstrate that, had his trial counsel filed a motion for deferred adjudication, a reasonable probability exists that the trial court would have granted this motion and imposed deferred adjudication community supervision instead of a fifteen-year sentence. Some facts in the record indicate that Young might be a good candidate for deferred adjudication community supervision: he was only seventeen years old when the offense occurred; he admitted in the PSI that he knew what he did was wrong; he expressed remorse and a desire to obtain counseling; his family, including the complainant, expressed their forgiveness; and the PSI contained several reference letters from family members praising Young's law-abiding ways and his general good character. The record also contains evidence, however, that Young sexually assaulted his twelve-year-old niece on two separate occasions, that these encounters were not consensual, and that violence was involved.

The trial court was aware of Young's desire for deferred adjudication. Given the trial court's broad discretion in sentencing and its broad discretion in determining whether to impose deferred adjudication community supervision, I cannot conclude, under the facts of this case, that the result probably would have been different had Young's trial counsel filed a motion for deferred adjudication. Thus, I would conclude that Young has not demonstrated that a reasonable probability exists that, but for his trial counsel's failure to file a motion seeking deferred adjudication, the trial court would have imposed deferred adjudication community supervision instead of a fifteen-year sentence.

### B. Failure to Object to Errors in PSI

Young also contends that his trial counsel was ineffective because he did not object to or move to correct the PSI, which contained erroneous information regarding the Baytown incident and which erroneously reflected that Young was eighteen at the time of the charged offense.

A defendant charged with aggravated sexual assault of a child under the age of fourteen may be placed on deferred adjudication community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(a) (requiring, in these cases, affirmative finding in open court that community supervision is in best interest of victim before defendant can receive deferred adjudication community supervision). Article 42.12, section 5, subsection (d), however, limits the availability of deferred adjudication community supervision and provides that this sentencing option is not available

if the defendant (1) is charged with indecency with a child, sexual assault, or aggravated sexual assault, regardless of the age of the victim, and (2) has previously been placed on community supervision "for any offense under Paragraph (A) of this subdivision." *Id.* § 5(d)(2). This limitation, however, applies only when the defendant has been previously placed on community supervision for one of the listed offenses. There is no such limitation on the availability of deferred adjudication community supervision if the defendant merely has a prior *arrest* for one of these offenses. Furthermore, although section 5, subsection (a) requires a "best interest of the victim" finding before the trial court can place the defendant on deferred adjudication community supervision when the aggravated sexual assault *victim* is under the age of fourteen, section 5 includes no limitations on the availability of deferred adjudication community supervision that are dependent upon the age of the *defendant.* See *id.* § 5(a).

Here, regardless of the confusion concerning whether the Baytown incident, an aggravated sexual assault case, was part of Young's juvenile or adult criminal record, the record is clear that no final disposition of the Baytown incident had occurred at the time the investigator prepared the PSI in this case. Thus, Young had not previously been placed on community supervision for aggravated sexual assault at the time the trial court sentenced him. Because Young would be ineligible for deferred adjudication community supervision only if he had been previously placed on community supervision for the Baytown incident, the mere fact that he had previously been arrested for this incident does not affect his eligibility. Moreover, whether this incident occurred when Young was a juvenile or an adult is irrelevant; article 42.12, section 5 does not, for example, provide that a defendant may be eligible for deferred adjudication community supervision if he has a *juvenile* criminal record, but ineligible if he has an *adult* criminal record. See *id.* § 5. Because these errors do not affect his eligibility for deferred adjudication community supervision, Young cannot demonstrate that, had his counsel objected to or moved to correct the errors regarding the Baytown incident, there is a reasonable probability that the trial court would have imposed deferred adjudication community supervision instead of fifteen years' confinement.

Young's age at the time that he committed the charged offense is likewise irrelevant to his eligibility for deferred adjudication. Article 42.12, section 5 imposes an additional requirement—a finding in open court that community supervision is in the best interest of the victim—in indecency with a child, sexual assault, and aggravated sexual assault cases in which the *victim* is under the age of fourteen. See *id.* § 5(a). The deferred adjudication statute contains no provisions restricting deferred-adjudication eligibility in aggravated sexual assault of a child under the age of fourteen cases to instances in which the *defendant* is a certain age, such as seventeen or younger. Thus, the erroneous implication in the PSI that Young was eighteen at the time of the charged offense has no effect on his eligibility for deferred adjudication community supervision. Young, therefore, cannot demonstrate that, had his trial counsel objected to the erroneous implication in the PSI concerning his age at the time of the charged offense, a reasonable probability exists that he would have received deferred adjudication instead of fifteen years' confinement.

## C. Failure to Request a Reporter's Record

Finally, Young contends that his trial counsel rendered ineffective assistance be-

cause his counsel failed to request a court reporter for the sentencing hearing, and a transcript of the hearing would have revealed (1) counsel's objections to the errors in the PSI or his failure to so object, and (2) counsel's objection to the fifteen-year sentence as cruel and unusual or his failure to so object. Young contends, in his second issue, that his fifteen-year sentence constitutes cruel and unusual punishment. I first consider Young's second issue, as it is relevant in determining whether Young's trial counsel was constitutionally ineffective for failing to request a reporter's record.

The trial court has broad discretion in fashioning an appropriate sentencing plan. *See Hurley*, 130 S.W.3d at 506. Generally, punishment that is assessed within the statutory limits is not excessive, cruel, or unusual punishment. *Dale v. State*, 170 S.W.3d 797, 799 (Tex.App.-Fort Worth 2005, no pet.). We review Eighth Amendment challenges "by reviewing the proportionality of the sentence compared to the crime." *Arriaga v. State*, 335 S.W.3d 331, 335 (Tex.App.-Houston [14th Dist.] 2010, pet. ref'd) (citing *Graham v. Florida*, 560 U.S. 48, 60–61, 130 S.Ct. 2011, 2022, 176 L.Ed.2d 825 (2010)). We consider (1) the gravity of the offense and the harshness of the penalty; (2) the sentence imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the crime in other jurisdictions. *Id.* We only consider the second two factors if we determine that the sentence is grossly disproportionate to the offense under the first factor. *Id.*

Young pleaded guilty to the charge of aggravated sexual assault of a child under the age of fourteen. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (Vernon Supp. 2011). As a first degree felony, this offense carries a potential punishment range of five to ninety-nine years' imprisonment

or confinement for life. *See id.* § 22.021(e) (defining aggravated sexual assault as first-degree felony); *id.* § 12.32(a) (Vernon 2011) (describing punishment range for first degree felonies). "This legislative policy determination is entitled to wide deference." *Arriaga*, 335 S.W.3d at 335.

Here, the trial court assessed punishment at fifteen years' confinement. Other Texas courts have upheld more severe punishments for aggravated sexual assault of a child as not disproportionate to the offense and, therefore, as constitutionally permissible. *See id.* at 335–36 (upholding life sentence); *Williamson v. State*, 175 S.W.3d 522, 525 (Tex.App.-Texarkana 2005, no pet.) (upholding three life sentences for three counts of aggravated sexual assault of child); *Nunez v. State*, 110 S.W.3d 681, 682–83 (Tex.App.-Corpus Christi 2003, no pet.) (upholding twenty-year sentence for aggravated sexual assault of child).

Young argues that this sentence was disproportionate to the offense given his age and the fact that he was eligible for deferred adjudication. A trial court's decision whether to impose deferred adjudication community supervision is entirely discretionary; a trial court is not statutorily required to impose deferred adjudication even if the defendant meets the eligibility requirements. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 5(a); *Hurley*, 130 S.W.3d at 506. Given the trial court's broad discretion in sentencing and the particular facts of this case—especially the fact that Young sexually assaulted his twelve-year-old niece on two occasions and that there is evidence that the encounters were violent and nonconsensual—I would conclude that the trial court did not abuse its discretion by refusing to impose deferred adjudication community supervision and by, instead, assessing punishment at fifteen years' confinement. I would there-

fore overrule Young's second issue on the basis that he cannot demonstrate that the trial court abused its discretion in sentencing him, and, thus, he cannot demonstrate that his fifteen-year sentence constitutes cruel and unusual punishment.

As the majority notes, trial counsel's failure to request that a court reporter record specific proceedings is not *per se* ineffective assistance of counsel. *Gonzales v. State*, 732 S.W.2d 67, 68 (Tex.App.-Houston [1st Dist.] 1987, no pet.). "Some injury resulting from the failure to request transcription must be raised by appellant on appeal." *Lopez v. State*, 838 S.W.2d 758, 760 (Tex.App.-Corpus Christi 1992, no pet.).

As I have already stated, even if his trial counsel failed to object to the errors in the PSI, Young cannot demonstrate that, but for this failure, a reasonable probability exists that he would have received deferred adjudication community supervision. I would similarly hold that Young cannot demonstrate that the trial court abused its discretion when it assessed punishment at fifteen years' confinement even though Young was eligible for deferred adjudication community supervision. Thus, regardless of whether a reporter's record would have revealed that his trial counsel failed to object to the errors in the PSI and to the fifteen-year sentence as cruel and unusual punishment, Young cannot establish prejudice—that the result of the proceeding would have been different—as a result of his trial counsel's failure to request a reporter's record.

I would therefore overrule Young's first issue on the basis that he cannot demonstrate prejudice as a result of his trial counsel's alleged errors. I would overrule his second issue on the basis that he cannot demonstrate that the trial court abused its discretion in assessing punishment at fifteen years' confinement instead of deferred adjudication community supervision.

**Conclusion**

Because I disagree with the majority's reasoning regarding Young's claims, but agree that Young has not established that his trial counsel rendered constitutionally ineffective assistance or that his sentence constituted cruel and unusual punishment, I respectfully concur.